IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAIME STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-353-WKW |
| ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jaime Stewart brings this action under 42 U.S.C. § 1983 against the City of Montgomery, Alabama, and two of its police officers, alleging, among other claims, that the officers used excessive force against him in violation of the Fourth Amendment. Before the court is Defendants' motion for summary judgment. (Doc. # 49.) The motion has been fully briefed. (Docs. # 50, 56, 57, 58.) Based upon careful consideration of the arguments of counsel, the relevant law, and the record as a whole, Defendants' motion for summary judgment is due to be granted on the federal law claims, and supplemental jurisdiction is due to be declined on the state law claims.

**I. JURISDICTION AND VENUE**

28 U.S.C. §§ 1331, § 1343, and § 1367 confer subject matter jurisdiction. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmovant has failed to present evidence in support of some element on which it bears the ultimate burden of proof.  *Id.* at 322–24.  "[T]he court must view all evidence and make all reasonable inferences in favor of the [nonmovant]."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict

for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

### III.  BACKGROUND[1]

On the morning of November 15, 2009, during the ten o'clock hour, Mr. Stewart and his uncle were on the front porch of his uncle's house on McKinley Avenue in Montgomery, Alabama.  The two started arguing, and the arguing escalated.  After the two exchanged shoves, Mr. Stewart's uncle retrieved his shotgun from the house, returned to the porch, and aimed the barrel at Mr. Stewart.  Mr. Stewart "pushed the barrel down, pushed [his uncle] back in the house, took the gun from him, unloaded it, put the gun down, and left the house" through the front door. (Pl.'s Dep. 12.)

As he was walking "around the corner of the house" toward the backyard, Mr. Stewart saw two or three marked police cars driving toward the house.[2]  Moments later, after Mr. Stewart had walked approximately fifteen feet alongside the house, officers were in the yard, commanding him to get on the ground face down.  Mr.

---

[1] The facts are construed in the light most favorable to Mr. Stewart.  These summary judgment facts "may not be the actual facts of the case." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotation marks and citation omitted).

[2] Unbeknownst to Mr. Stewart, the officers had received a radio dispatch order to respond to 911 calls that two white males were involved in a heated argument at the house on McKinley Avenue and that one of the males had a firearm.  Both Mr. Stewart and his uncle are adult white males.

Stewart immediately stopped and "laid on the ground." (Pl.'s Dep. 12.) Three officers walked toward Mr. Stewart. Two of the officers were black males, and the other officer was a white male. They commended him because he "didn't run." (Pl.'s Dep. 12.) One of the black officers positioned himself on one side of Mr. Stewart ("Officer # 1"), and the white officer stood on the other side of Mr. Stewart ("Officer # 2"). One or both of these officers then handcuffed Mr. Stewart. When Officer # 1 and Officer # 2 started lifting Mr. Stewart off the ground, he complained of pain because he has "metal plates and pins" in one arm. (Pl.'s Dep. 15.) Suddenly, for no reason, the third officer ("Officer # 3") kicked Mr. Stewart in the jaw. Knocked semiconscious, Mr. Stewart started bleeding "out of [his] mouth." (Pl.'s Dep. 17.) His jaw was cracked and was "shifting around just steadily popping." (Pl.'s Dep. 17.)

    The officers sat a still-bleeding Mr. Stewart on the curb. From the curb, Mr. Stewart observed Officer # 1 and Officer # 2 speaking to his uncle on the front porch. He also saw a fourth officer, a white male ("Officer # 4"), arrive on the scene and begin talking to Officer # 3. Although unable to hear the conversation from his vantage point twenty- to thirty-feet away, Mr. Stewart observed Officer # 4 motioning Officer # 3 to leave, and he did. While still at the scene, Mr. Stewart asked for the name of Officer # 3, but the other officers refused to identify him.

Officer # 1 and Officer # 2 transported Mr. Stewart to a local hospital where x-rays confirmed that Mr. Stewart's jaw was broken. Nevertheless, Mr. Stewart was cleared by the doctors for incarceration the same day. The officers then transferred Mr. Stewart to the city jail, where he was booked on misdemeanor charges, including disorderly conduct, and spent the night. Ultimately, Mr. Stewart's broken jaw required surgery.

Nineteen months after this incident and still suffering from the effects of his broken jaw, Mr. Stewart filed this lawsuit on May 9, 2011. Mr. Stewart originally sued only the City of Montgomery ("City"). He alleged that the City had a policy or custom of permitting the use of excessive force by failing to investigate and discipline officers for known incidents of excessive force. Mr. Stewart sought damages under § 1983 for a Fourth Amendment violation. He also brought a state law claim against the City for negligence. In the Complaint, Mr. Stewart represented that he did not know the identity of the "tall black officer" who had kicked him in the jaw. (Compl. ¶ 3.) He said, however, that upon ascertaining the identity of that officer, he would move for leave to amend the Complaint.

The City moved to dismiss the Complaint for failure to state a claim on the ground that it failed to plead a plausible claim that any use of excessive force was in furtherance of a policy or custom of the City. The court denied the motion, permitted

5

discovery to proceed, but noted that whether Mr. Stewart can prove a viable theory of municipal liability "remains to be seen."  (Order 5 (Doc. # 17).)

On December 12, 2011, seven months after filing this lawsuit and well into the discovery period, Mr. Stewart moved to amend the complaint.  That motion was granted.  The governing Amended Complaint retains the two claims against the City and joins Montgomery Police Department Officers E. S. Pinkett and Q. A. Wilkins as additional defendants.  The § 1983 claim alleges in the disjunctive that either Officer Wilkins or Officer Pinkett violated Mr. Stewart's right to be free from excessive force, in violation of the Fourth Amendment.  A second claim alleges that either Officer Pinkett or Officer Wilkins assaulted and battered Mr. Stewart, in violation of state law.  Mr. Stewart sues the officers in their individual capacities for compensatory and punitive damages.

There is no dispute that the City employed Officers Pinkett and Wilkins as police officers on the date of the incident at issue.  Officer Pinkett is no longer employed by the City, however, and presumably for that reason, service of process took longer than expected.  On May 29, 2012, after Mr. Stewart perfected service on Officer Pinkett, he joined Defendants in moving for a continuance of the discovery deadline to ensure that the parties had a "fair opportunity to engage in meaningful discovery."  (Joint Mot. 2 (Doc. # 39).)  The court granted that motion and extended

the discovery deadline by three months to September 7, 2012. (Order (Doc. # 41).) On September 21, 2012, Defendants moved for summary judgment on all claims. Mr. Stewart filed a response in opposition to the motion.

## IV.  DISCUSSION

The court addresses first Mr. Stewart's § 1983 Fourth Amendment excessive force claim against the individual officers, then his § 1983 municipal liability claim against the City, and last, the supplemental state law claims against all Defendants.

### A.     § 1983 Fourth Amendment Excessive Force Claim Against the Individual Officers

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).

At his deposition, Mr. Stewart testified that he complied fully with the officers' oral commands to lie face down on the ground, did not flee, and did not otherwise resist his arrest. Mr. Stewart further testified that when Officer # 3 kicked him in the jaw, he was in handcuffs, was not resisting arrest, and posed no threat. Defendants

7

concede that these facts raise a genuine issue of material fact regarding whether Officer # 3's kick was gratuitous and, thus, the force excessive. Defendants argue, however, that on Mr. Stewart's facts, neither Officer Wilkins nor Officer Pinkett is the officer who allegedly delivered the jaw-breaking kick to a restrained Mr. Stewart. Mr. Stewart's suit against these two officers is, according to Defendants, a case of mistaken identity.

### 1. *Officer Wilkins*

Defendants submit evidence that Officer Wilkins was not present at the scene during Mr. Stewart's arrest on November 15, 2009. As a correctional officer at the city jail, Officer Wilkins's only contact with Mr. Stewart occurred when he "received Mr. Stewart into the jail." (Wilkins's Aff. 1.) By that point, Mr. Stewart already had suffered the broken jaw of which he complains in this action.

In his brief opposing summary judgment, Mr. Stewart does not refute this evidence; he simply ignores it. Nor does Mr. Stewart argue any theory of liability against Officer Wilkins or even mention his name.

Mr. Stewart implicitly has abandoned his § 1983 claim against Officer Wilkins. Even if Mr. Stewart had not abandoned it, he has failed to raise a genuine issue of material fact that would preclude the entry of summary judgment. Officer Wilkins has demonstrated that there is no genuine dispute as to any material fact and that he

8

is entitled to judgment as a matter of law. Accordingly, summary judgment is due to be entered in Officer Wilkins's favor on the § 1983 Fourth Amendment claim alleging the use of excessive force.

### 2. *Officer Pinkett*

Unlike Officer Wilkins, Officer Pinkett undisputedly was one of the officers on the scene on the day in question. "To establish § 1983 liability, a plaintiff must show 'proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.'" *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).

In his brief opposing summary judgment, Mr. Stewart's theory rests on Officer Pinkett's alleged personal involvement as the officer who dealt the jaw-breaking kick.[3] Under Mr. Stewart's version of events, therefore, Officer Pinkett purportedly was Officer # 3. While Defendants argue a vastly different version of the facts concerning the amount of force used and the nature of Mr. Stewart's behavior, they contend that on Mr. Stewart's facts, Officer Pinkett was Officer # 2 and clearly not Officer # 3. Namely, Defendants present evidence that Officer Pinkett, a black male,

---

[3] Mr. Stewart alleges no other theory of liability with respect to Officer Pinkett.

9

was one of the first officers on the scene and assisted the white, male officer (Officer # 1) in handcuffing Mr. Stewart. He could not have been, therefore, Officer # 3, the third officer who then allegedly kicked Mr. Stewart in the jaw. Defendants also present evidence that Officer Pinkett drove Mr. Stewart to the hospital and then to the city jail. Defendants point out that on Mr. Stewart's facts, Officer Pinkett could not have been Mr. Stewart's attacker because Mr. Stewart contends that his assailant (Officer # 3) left the scene after the alleged unprovoked attack and prior to Mr. Stewart's transport to the hospital. Based upon this evidence, Defendants satisfy their summary judgment burden of establishing that Officer Pinkett is not the officer who kicked Mr. Stewart and broke his jaw. Mr. Stewart now bears the burden of demonstrating that a genuine issue of material fact actually exists with respect to Officer Pinkett's identity as the tortfeasor.

In a singular sentence in his brief opposing summary judgment, Mr. Stewart asserts, but without elaboration, that Officer Pinkett is the officer "who kicked [him] in the face." (Pl.'s Summ. J. Resp. 2–3 (Doc. # 56).) He must back up this assertion with evidence, however, for it to have any power to prevent summary judgment. *See United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) ("[A]rguments in brief are not evidence.").

The evidentiary documents Mr. Stewart cites fail to substantiate his assertion. Mr. Stewart relies upon three pages of his deposition testimony and an affidavit he filed with the City four months after his arrest. Nowhere in either the deposition testimony or the affidavit does Mr. Stewart identify Officer # 3 or any other officer by name. The affidavit indicates merely that "a tall, black, male officer" kicked Mr. Stewart in the face, rendering him semiconscious, and then left the scene upon a superior's command to do so. (Pl.'s Aff. 1–2.) Similarly, throughout his deposition, Mr. Stewart describes the officers only by race and gender, and occasionally by height and build, but never by name. Indeed, Mr. Stewart never purports to know the officers' identities, and there is nothing in the record from which to infer their identities. Moreover, during his deposition, Mr. Stewart specifically agrees that the officer who kicked him was "the second black officer," the same one sent from the scene by Officer # 4. Therefore, the officer who kicked him was Officer # 3, who is not Officer Pinkett, and who is not named in this suit.

In sum, Mr. Stewart does not refute Defendants' evidence that Officer Pinkett was Officer # 2, argue that Officer # 2 engaged in any wrongdoing, or point to any evidence that raises a genuine issue of material fact that Officer Pinkett was Officer

# 3, who kicked him in the jaw while he was restrained in handcuffs.[4]  Accordingly, summary judgment is due to be entered in Officer Pinkett's favor on the § 1983 Fourth Amendment claim alleging use of excessive.

**B.    § 1983 Municipal Liability Claim Against the City**

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "'It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.'"  *City of Canton v. Harris*, 489 U.S. 378, 385 (1988) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)).

"'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality."  *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).  "A pattern of similar constitutional violations . . . is

---

[4] Mr. Stewart has had ample time to conduct pre-trial discovery to ascertain the identity of Officer # 3.  Formal discovery proceeded for a year.  Moreover, when the parties moved for an additional three months to complete discovery, the court granted the motion.  Mr. Stewart has filed no other discovery-related motions and has not otherwise sought the aid of the court with respect to his quest to identify his alleged assailant.

'ordinarily necessary.'" *Id.* (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)).

As to Mr. Stewart's theory of municipal liability, he argues that the City had a policy or custom of failing to discipline its officers for engaging in excessive force or investigating complaints of excessive force, and that the policy or custom caused his constitutional injuries in this case. Defendants argue that Mr. Stewart fails to present evidence of a policy or custom sufficient to survive summary judgment. The court agrees.

Liberal discovery has been permitted pertaining to the City's § 1983 liability for its unconstitutional policy or custom pertaining to its officers' purported use of excessive force. (*See* Order denying the City's motion to dismiss in favor of permitting discovery (Doc. # 17).) Nonetheless, Mr. Stewart does not present any evidence of any other similar incident involving an officer's use of excessive force or any incident where the City failed to discipline or investigate an officer for use of excessive force. Rather, Mr. Stewart's evidence of a municipal policy or custom consists solely of a single incident alleging the use of excessive force. He submits no authority that suggests this single incident is enough. While the Supreme Court has hypothesized that narrow circumstances may exist where a plaintiff can prevail based upon a single incident, *see Connick*, 131 S. Ct. at 1361, such narrow

13

circumstances are not present here and are not relied upon by Mr. Stewart. Because § 1983 municipal liability does not attach based upon Mr. Stewart's evidence of a single incident of the City's failure to investigate and discipline an officer for using excessive force, summary judgment is due to be entered in the City's favor on the § 1983 municipal liability claim.

## C.  Supplemental State Law Claims Against the Individual Officers and the City

Because Defendants are entitled to summary judgment on all federal law claims, the court in its discretion declines supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' motion for summary judgment (Doc. # 49) is GRANTED on Plaintiff's § 1983 Fourth Amendment excessive force claim against Officer Wilkins and Officer Pinkett and on his § 1983 municipal liability claim against the City of Montgomery.

It is further ORDERED that Defendants' motion for summary judgment (Doc. # 49) is DENIED as moot on Plaintiff's state law claims, and that the state law claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate judgment will be entered separately.

DONE this 25th day of January, 2013.

                                              /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE